1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   JAMES B. MITCHELL,                          CASE NO. 1:01 CV 5773-REC-DLB (PC)

10                     Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                                RECOMMENDING DEFENDANTS' MOTION
11        v.                                    FOR SUMMARY JUDGMENT BE GRANTED
                                                IN PART
12   ANDREWS, et al.,
                                                (Doc. 49)
13                     Defendants.
                                         /
14

15   I.      Defendant's Motion for Summary Judgment

16           A.      Procedural History

17           Plaintiff James B. Mitchell ("plaintiff") is a former federal prisoner proceeding pro se and

18   in forma pauperis.  Plaintiff seeks relief pursuant to <u>Bivens v. Six Unknown Named Agents of</u>

19   <u>Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), which provides a remedy for violation of civil

20   rights by federal actors.  This action is proceeding on plaintiff's fourth amended complaint, filed

21   March 17, 2003, against defendants Andrews, Puentes, Toews, Hunt, Smetzer, Rivas, Gardner,

22   Holm, Choate, Quibrera and Hammond for retaliation and against defendants Ford and Rivas for

23   interference with plaintiff's right to receive mail.[1]  On February 8, 2005, defendants Andrews,

24   Towes, Smetzer, Ford, Puentes and Hunt filed a motion for summary judgment.[2]  Plaintiff filed an

25   opposition on March 22, 2005 and an amended opposition on March 25, 2005.  Defendants filed a

26

27           [1] On November 5, 2003, plaintiff's due process claims and defendant Wackenhut Corporation were
     dismissed from this action for failure to state a claim.

28           [2]Defendants Rivas, Gardner, Holm, Choate and Hammonds have not been served with the instant action.

1   filed a reply on April 28, 2005 and plaintiff filed an additional response on May 6, 2005.

2   B.   Legal Standard

3   Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

4   as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.

5   Civ. P. 56©).  Under summary judgment practice, the moving party

6   [A]lways bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the
7   pleadings, depositions, answers to interrogatories, and admissions on
    file, together with the affidavits, if any," which it believes
8   demonstrate the absence of a genuine issue of material fact.

9   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

10  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

11  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

12  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

13  motion, against a party who fails to make a showing sufficient to establish the existence of an

14  element essential to that party's case, and on which that party will bear the burden of proof at trial.

15  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

16  case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment

17  should be granted, "so long as whatever is before the district court demonstrates that the standard

18  for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

19  If the moving party meets its initial responsibility, the burden then shifts to the opposing

20  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

21  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

22  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

23  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

24  material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586

25  n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

26  might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

27  U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

28  (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436

2  (9th Cir. 1987).

3      In the endeavor to establish the existence of a factual dispute, the opposing party need not

4  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

6  trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

7  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

8  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

9  amendments).

10     In resolving the summary judgment motion, the court examines the pleadings, depositions,

11 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56©).

12 The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable

13 inferences that may be drawn from the facts placed before the court must be drawn in favor of the

14 opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655

15 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

16 party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards</u>

17 <u>v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th

18 Cir. 1987).

19     Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

20 that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

21 could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

22 trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

23     C.     <u>Undisputed Facts</u>[3]

24     Plaintiff was incarcerated at Taft Correctional Institution ("TCI"), a federal prison operated

25 by Wackenhut Corrections Corporation ("WCC") pursuant to a contract between it and the United

26 States Department of Justice, Federal Bureau of Prisons ("BOP"), from May 1998 to April 2000.

27

28     [3]The undisputed facts are taken from Defendants' Statement of Undisputed Facts, Plaintiff's Opposition and the Fourth Amended Complaint.

Fourth Amended Complaint ("Complaint") at ¶ 3. TCI has three identical housing units (A3A, A3B and A3C) and one Special Housing Unit. Declaration of Raymond Andrews ("Andrews Dec.") ¶ 5; Declaration of Georgina Puentes ("Puentes Dec.") ¶ 4. The identical housing units house all general population approved inmates and the Special Housing Unit houses inmates separate from the general population. Id. During incarceration, inmates are constantly rotated from their sleeping quarters due to medical concerns, sleeping habits and other related factors. Id. The institution is obligated to assign inmates to sleeping quarters which are not a privilege. Id.

Defendant Puentes authored a memorandum dated September 15, 1999 advising inmates that there were several beds "opening" in units A3A and A3C and interest "eligible" inmates should see their assigned counselors. Plaintiff's Amended Opposition to Defendants' Motion for Summary Judgment ("Opposition"), Ex. 2.

Plaintiff alleges that while the three general population housing units are identical in physical structure, the living conditions are quite different in that the non-preferred and less desirable unit (A3B) is overcrowded and the preferred housing units (A3A and A3C) are not. Opposition at p. 3.

Defendants Smetzer, Toews and Puentes are plaintiff's unit team. Complaint at ¶ 27.

On or about August 26, 1999, plaintiff was moved from housing unit A3A to A3B, where he continued to reside until October 25, 1999 when he was placed in the Special Housing Unit. Opposition at p. 3; Complaint at ¶ 31. Plaintiff continued to reside in the Special Housing Unit until his transfer in April 2000. Id.

In response to plaintiff's administrative complaints regarding his move from housing unit A3A to A3B in August 1999, defendant Smetzer advised that "Administration felt you were not making a positive adjustment." Opposition, Ex. 5.

If mail addressed to an inmate contained serious contraband, the letter would be provided to the special investigations officer on duty. Declaration of Terry Ford ("Ford Dec."), ¶ 3. This is the process to be followed pursuant to the BOP and TCI rules and regulations. Id.

On or about October 25, 1999, defendant Ford was the mail room supervisor at TCI, when a letter, addressed to plaintiff from is sister was received. Complaint at ¶ 31. The letter contained, *inter alia*, the names and home addresses of many of the defendants in this lawsuit which plaintiff

1   had asked his sister to obtain for him for use in preparation of a lawsuit. Id.  The letter was routed

2   for investigation as contraband and plaintiff was placed in the Special Housing Unit - Administrative

3   Detention.  Complaint at ¶¶ 31, 32; Andrews Dec. ¶ 8; Puentes Dec. ¶ 7; Toews Dec. ¶ 4.  The

4   information was inaccurate and out of date so TCI did not take formal action disciplinary action but

5   TCI determined that plaintiff was a risk to the institution, staff, and other inmates and should be

6   transferred to another institution. Id.  Pending that transfer, plaintiff remained in the Special Housing

7   Unit because TCI found his continued presence in the general population posed a serious threat to

8   life, property, self, staff, other inmates, or to the security or orderly running of the institution and

9   placement in general population was not prudent. Id.  Defendants Puentes and Smetzer did not have

10  the authority to place an inmate into the Special Housing Unit.  Puentes Dec. ¶ 6; Smetzer Dec. ¶ 3.

11          Plaintiff filed a "barrage of administrative remedies" in the months preceding his housing

12  change in August 1999 relating to being denied participation in the BOP's RDAP.  Opposition at

13  p. 7.

14          Plaintiff filed a "series of administrative remedy complaints over the housing change" after

15  August 26, 1999.  Plaintiff filed a grievance over his denial of mail and participated in Court

16  proceedings entitled *Mitchell v. Andrews*, USDC, EDCA 99-CV-05551 OWW HGB (HC) and

17  *Mitchell, et. al. V. Wackenhut Corrections, et. al.,* USDC, EDCA 00-CV-05196 OWW HGB (P)

18  during the alleged period of retaliation, August 26, 1999 to April 2000.  Opp. P. 5; Complaint at ¶¶

19  5, 32; Opposition at p. 11.

20          D.      Discussion

21          In his fourth amended complaint, plaintiff alleges that he was retaliated against by defendants

22  for filing inmate grievances.  He alleges that the August 1999 move from "preferred" housing to

23  "non-preferred" housing was in retaliation for filing administrative complaints in the preceding

24  months. Plaintiff alleges that his October 1999 placement in Special Housing was also retaliatory

25  for filing prison grievances. He also alleges that defendant Ford interfered with his First Amendment

26  right to receive mail in October 1999 when Ford confiscated the letter from plaintiff's sister and did

27  not provide it to plaintiff.

28  ///

1             1.  <u>Interference with Mail Claim</u>

2  Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52

3  F.3d 264, 265 (9th Cir. 1995).  Prison regulations relating to the regulation of incoming mail are

4  analyzed under the Turner reasonableness standard set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89-91

5  (1987).  <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  The regulation is valid if it is

6  reasonably related to legitimate penological interests.  <u>Turner</u>, 482 U.S. at 89.  In determining the

7  reasonableness of the regulation, court must consider the following factors: (1) whether there is a

8  "valid, rational connection between the regulation and the legitimate government interest put forward

9  to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the

10  "accommodation of the asserted constitutional right will have on guards and other inmates," and (4)

11  "the absence of ready alternatives."  <u>Turner</u>, 482 U.S. at 89-90.  Prison officials may

12  Defendant Ford was the mail room supervisor at the times relevant to plaintiff's allegations.

13  <u>See</u> <u>Ford Dec.</u> ¶1.  While defendant Ford does not specifically recall the letter at issue, he states that

14  if the letter contained serious contraband, he would, in the normal course of business  provide the

15  letter to the special investigations officer on duty pursuant to BOP and TCI rules and regulations.

16  Defendants submit the declarations of defendant Andrews and defendant Puentes which state that

17  the letter at issue was sent to plaintiff by his sister and purported to have the home addresses of TCI

18  staff members.  Andrews Dec. ¶8; Toews Dec. ¶ 4.

19  Defendants argue that Section 514.14 of title 28 of the Code of Federal Regulations allows

20  prison staff to open and inspect all incoming general correspondence which may be rejected by the

21  Warden if it is determined detrimental to the security, good order or discipline of the institution, to

22  the protection of the public, or if it might facilitate criminal activity.  Defendants contend that the

23  regulations are in place to protect the security and safety of the institution, maintain the orderly

24  running of the institution and to deter criminal activity.  Defendants note the "obvious connection

25  between the regulations and the interest of the institution, its employees and the inmates" and that

26  plaintiff was not restricted from sending or receiving correspondence as long as he and those he

27  corresponded with followed BOP and TCI rules and regulations.

28  Defendants argue that summary judgment is appropriate on this claim as a matter of law

because the letter from plaintiff's sister was suspected to contain contraband and therefore Ford was required to forward the letter and disclose its contents to TCI's investigation unit.

The court finds that defendants have met their initial burden of informing the court of the basis for the motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In opposition, plaintiff does not address defendants' arguments on this claim and in fact now appears to question whether the letter ever existed. See Opposition at p. 9. Based on the evidence submitted by defendants, the letter was confiscated, pursuant to regulation because it was suspected to contain contraband. Prison security is clearly a valid penological concern and there is an obvious connection between the regulation and the government's interest. Inmates are not restricted from sending or receiving mail as long as the security concerns are observed. The court therefore finds that plaintiff has not submitted evidence raising any triable issues of fact with respect to his First Amendment Claim for interference with his mail and therefore summary judgment is appropriate as to this claim.

  2. Retaliation Claim

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains

7

1  of." <u>Pratt</u>, 65 F.3d at 808.

2       a.       Housing Unit Change in August 1999.

3       It is undisputed that plaintiff filed administrative grievances over being denied participation

4  in the RDAP prior to his housing change in August 1999.  In their motion for summary judgment,

5  defendants claim that TCI does not have "preferred" housing units or "less desirable" units and that

6  they are all identical.  Defendants contend that plaintiff's housing unit was changed because the

7  inmates are constantly rotated among the three identical housing units to accommodate medical

8  concerns, sleeping habits and other related factor.  In their reply to plaintiff's opposition, defendants

9  claim that "plaintiff's move from A3A to A3B was made because Plaintiff was not making a positive

10  adjustment, a valid penological interest . . ." Defendant's Reply p. 5:15-16.  Defendants nevertheless

11  argue that plaintiff cannot establish a prima facie case of retaliation because he cannot show that

12  defendants' conduct had a chilling effect on his participation in the protected activities.

13       The court finds that defendant has met his initial burden of informing the court of the basis

14  for his motion, and identifying those portions of the record which he believes demonstrate the

15  absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that

16  a genuine issue as to any material fact actually does exist.  See <u>Matsushita Elec. Indus. Co. v. Zenith</u>

17  <u>Radio Corp.</u>, 475 U.S. 574, 586 (1986).

18       As stated above, in attempting to establish the existence of this factual dispute, plaintiff may

19  not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of

20  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

21  contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>,

22  391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).  Verified complaints and

23  oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are

24  based on facts within the pleader's personal knowledge.  <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-

25  1400 (9th Cir. 1998).  In this instance, for the reasons set forth below, plaintiff's verified complaint

26  and opposition are sufficient to establish the existence of a genuine issue of material fact precluding

27  summary judgment on plaintiff's claim for retaliation relating to the August 1999 Housing change.

28       Filing prison grievances is a protected activity, <u>See</u> <u>Rhodes</u>, 408 F.3d at 568.  The issue here

is whether the change in plaintiff's housing unit was an adverse action and if so whether the change advanced a legitimate correctional goal and whether it chilled plaintiff's rights.  It is undisputed that the three housing units are physically identical.  However, plaintiff claims that the unit he was moved to was "overcrowded" and "less desirable."  Plaintiff submits a declaration from another inmate attesting to this and plaintiff also provides a copy of a memorandum from defendant Puentes dated September 15, 1999 outlining eligibility requirements for units A3A and A3C (the alleged "preferred" units).  See Opposition, Ex. 1& 2.  In their reply, defendants appear to concede that plaintiff's move to unit A3B move was punitive in nature by stating, "plaintiff's move was because he was not making a positive adjustment."  Reply at p. 5:15-16.  However, defendants provide no evidence in support of this assertion.  Plaintiff alleges that he met all of the eligibility criteria for the "preferred" units.  Opposition at p. 4.  There is therefore a factual dispute over whether the housing unit change in August 1999 was an adverse action and whether the move advanced a legitimate correctional goal thereby precluding summary judgment on this claim.

Defendants argue that plaintiff cannot establish a prima facie case because the conduct, even if adverse did not have a chilling effect on plaintiff in that he continued to file grievances after the move.  However, this argument was rejected by the Ninth Circuit in Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005)[The infliction of harms other than a total chilling effect can establish prison officials' liability for retaliating against a prisoner for exercising his or her First Amendment rights.].  As plaintiff correctly notes, " The mere fact that he continued to exercise his right to file grievances against defendants, did not negate, in its entirety, the chilling effect of the defendants' acts of retaliation against plaintiff and his First Amendment Rights."  Plaintiff's Response to Reply at p. 3.

Defendants Puentes, Towes and Smetzer argue that they did not order a change in plaintiff's housing and therefore cannot be liable.  However, defendants Puentes, Towes and Smetzer were plaintiff's unit team (Complaint at ¶ 6).  In the assistant warden's response to plaintiff's grievance regarding the housing change, defendant Gardner stated that, "Your Unit Team does not feel you are making a positive adjustment to incarceration at Taft Correctional Institution and therefore do not believe you are appropriate for an A dorm."  Opposition, Ex. 7.  There is therefore a factual dispute over defendants Puentes., Towes and Smetzer's involvement in the housing change.

b.      Plaintiff's Move to the Special Housing Unit in October 1999.

Plaintiff alleges that he was placed in the Special Housing Unit in October 1999 in retaliation for filing inmate grievances.  Defendants argue that plaintiff was placed in the Special Housing Unit pursuant to 28 C.F.R. § 541.22 which provides:

> The Warden may place an inmate in administrative detention when the inmate is in holdover status (i.e., en route to a designated institution) during transfer, or is a new commitment pending classification. The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:
> (1) Is pending a hearing for a violation of Bureau regulations;
> (2) Is pending an investigation of a violation of Bureau regulations;
> (3) Is pending investigation or trial for a criminal act;
> (4) Is pending transfer;
> (5) Requests admission to administrative detention for the inmate's own protection, or staff determines that admission to or continuation in administrative detention is necessary for the inmate's own protection (see § 541.23); or
> (6) Is terminating confinement in disciplinary segregation and placement in general population is not prudent. The Segregation Review Official is to advise the inmate of this determination and the reasons for such action.

28. C.F.R. § 541.22.  Defendants argue that plaintiff was placed in the Special Housing Unit because TCI was conducting an investigation into threats made by him to TCI employees arising out of an October 25, 1999 letter from his sister which purported to have the home addresses of TCI staff members.  Defendants allege the letter contained serious contraband and therefore was forwarded to TCI's unit for further handling.  Defendants assert that the information in the letter was obtained by plaintiff's sister from the internet at Plaintiff's request.  The information was inaccurate and out of date so TCI did not take formal discipline.  However, it was determined that plaintiff was a risk to the institution, staff and other inmates and should be transferred to another institution.  Pending that transfer, plaintiff remained in the Special Housing Unit.

The court finds that defendant has met his initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate

the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to

establish that a genuine issue as to any material fact actually does exist.  See  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Filing prison grievances is a protected activity, see Rhodes, 2005 WL 937814, at *5, and

placement in the Special Housing Unit (administrative detention) is clearly an adverse action.

The issue then becomes whether the placement in the Special Housing Unit advanced a

legitimate correctional goal and whether it chilled plaintiff's rights.

Plaintiff bears the burden of proving "that there were no legitimate correctional purposes

motivating the actions he complains of." Pratt, 65 F.3d at 808.  In his fourth amended complaint,

plaintiff admits that on or about October 25, 1999, while incarcerated at TCI, he received a letter

from his sister that contained names and addresses of many of the defendants in this action.

Complaint ¶ 31.  Therefore, defendants proffered basis for placing plaintiff in the Special

Housing Unit is undisputed.  Plaintiff also states in his complaint that the letter was given to

TCI's investigation unit and never provided to him and that on the same day, he was

"interrogated" and placed in the Special Housing Unit.  Id.  Plaintiff offers no evidence to

support his claim that his placement in the Special Housing Unit was for any other reason than

that offered by defendants.  Plaintiff's conclusory assertions that the investigation was a "sham"

and that  defendants' actions were retaliatory  are insufficient to meet his burden.  Defendants

have identified a legitimate reason for plaintiff's placement in the Special Housing Unit - namely

the investigation of potential threats to TCI employees.  Plaintiff has provided neither argument

nor evidence on this point, instead choosing to question whether the letter exists since defendants

did not produce it.  In light of plaintiff's allegations in his complaint, these arguments are

insufficient to meet the burden of demonstrating that defendant's action did not serve a legitimate

11

correctional goal.  Plaintiff must submit evidence that the action did not reasonably advance a legitimate correctional goal.  Plaintiff has not done so.  The court therefore finds that plaintiff has not submitted evidence raising any triable issues of fact with respect to his retaliation claim regarding his placement in the Special Housing Unit in October 1999.  Accordingly, defendant is entitled to judgment as a matter of law on this retaliation claim.

E.   Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed February 8, 2005, be GRANTED IN PART and DENIED IN PART as follows:

1.   Defendants' motion for summary judgment on plaintiff's First Amendment Claim against defendants Ford and Rivas for interference with mail be GRANTED;

2.   Defendants' motion for summary judgment on plaintiff's Retaliation Claim regarding his placement in the Special Housing Unit in October 1999 be GRANTED; and

3.   Defendants' motion for summary judgment on plaintiff's retaliation claim regarding the August 1999 housing move be DENIED and this case proceed to trial on this claim only.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to

///

///

Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order.

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 25, 2005**          **/s/ Dennis L. Beck**

3b142a                                              UNITED STATES MAGISTRATE JUDGE

13